# 14-1188-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

PEGGY MORRIS,

*Plaintiff-Appellant,*

—against—

CITY OF NEW YORK, KRYSTAL JOHNSON, EDWARD SILVESTRE, ROSA JORDAN, SHIELD 829, KRISTYN GRAZIANO, SHIELD 24802, POLICE OFFICER JAMES DAMERON, POLICE OFFICER JOHNNY HINES, III, SHIELD 20033, POLICE OFFICER CASSANDRA MCKAY-BROWN, DETECTIVE SHERMAN PEARSON, 113TH SQUAD DETECTIVES #1-6, 113TH, POLICE OFFICERS JOHN DOE, #1-12, 113TH, POLICE OFFICERS JANE DOE, #1-6,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFF-APPELLANT

JOSEPH N. OBIORA
LAW OFFICE OF
  JOSEPH N. OBIORA LLC
146-08 Hillside Avenue, 2nd Floor
Jamaica, NY 11435
(718) 297-3705

*Attorneys for Plaintiff-Appellant*

# **RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, plaintiff

PEGGY MORRIS, by her attorney, Joseph N. Obiora, submit the following

identification of corporate parents, subsidiaries and affiliates:

NONE

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT …………………………… ii

TABLE OF CONTENTS……………………………………………….. iii

TABLE OF AUTHORITIES…………………………………………… vi

JURISDICTIONAL STATEMENT …………………………………… 1

STATEMENT OF ISSUES PRESENTED...………………………….. 2

STATEMENT OF THE CASE……………………………………….... 3

STATEMENT OF FACTS…………………………………………….4

    A. December 14, 2009 arrest and prosecution of plaintiff……………4

        Complaint from witnesses with clear
        motives for false accusation………………………………………5

        Fabrication of evidence and missteps by
        James Dameron prior to the arrest of the plaintiff……………… 7

        Unauthorized entry and search of plaintiff's
        private residence………………………………………………….8

        Arrest of plaintiff over objections of
        her domestic partner ……………………………………………… 9

        Prosecution of plaintiff on three count felony charges
        made possible by documents prepared by defendants
        during the arrest of the plaintiff……………………………… 10

    B. December 28, 2009 subsequent arrest of plaintiff lacked
       probable cause and was dismissed and sealed
       prior to arraignment………………………………………….11

    C. District Court's Rulings………………………………………….13

SUMMARY OF THE ARGUMENT………………………………15

Page

ARGUMENT……………………………………………………... 18

I. PROPER STANDARD OF REVIEW IS DENOVO ……………... 18

II. DECEMBER 14, 2009 ARREST LACKED PROBABLE CAUSE…18

    A. Complaint leading to the arrest of plaintiff
       came from a witness with clear motive to be biased………… 19

    B. Nature of the complaint received necessitated
       further inquiry before arresting the plaintiff ………………… 23

III. DEFENDANTS EXCEEDED BOUNDS IN
    THE PROCESS OF THE WARRANTLESS
    ARREST OF DECEMBER 14, 2009………………………………..26

    A. Search of plaintiff's bedroom for a mailbox
       key at the request of Dave and Eric Miller is
       beyond allowable limit……………………………………… .26

    B. Non-consensual warrantless entry to make felony
       arrest in plaintiff's residence is a breach of
       plaintiff's *Payton* right……………………………………… .28

IV. THE PROSECUTION OF THE PLAINTIFF
    FOLLOWING THE DECEMBER 14, 2009
    ARREST LACKS PROBABLE CAUSE ………………………..30

    A. Protests by plaintiff's domestic partner against her
       arrest in his presence is a subsequent material
       evidence defeating probable cause to prosecute………………30

    B. Separate analysis of the 3 count criminal charges
       plaintiff was prosecuted on show absence of probable
       cause for each of them ………………………………………..32

    C. Qualified immunity not applicable when evidence
       is fabricated and there is deliberate violation
       of established statutory or constitutional rights
       which a reasonable person would have known………………35

Page

V.  THE DISTRICT COURT JUDGE COMMITTED
    A REVERSIBLE ERROR IN LAW BY PROCEEDING
    TO WEIGH IN ON FACTS …………………………….…………... 41

    A. There was no evidence to support the district court's
       findings of facts relating to Mr. Oborne Miller
       lying on a hospital bed as proof of incapacity…………………41

    B. The district court was wrong to have made a factual
       finding that a locksmith at the door invited in the
       police into the premises to arrest the plaintiff…………………. 43

    C. The district court misinterpreted some portions
       of plaintiff's deposition testimony to arrive at factual
       conclusions relating to the arrest of Dece. 28, 2009…………. 44

VI.  THE ARREST OF DECEMBER 28, 2009
     WAS BASED ON A WRONG INTERPRETATION
     OF A COURT ORDER…………………………………………….. 46

CONCLUSION………………………………………………………... 48

# TABLE OF AUTHORITIES

**CASES**                                                                   Page

*Adickes v. S.H. Kress & Co.,*
   398 U.S. 144 (1970)………………………………………………….. 41

*Anderson v. Creighton,*
   483 U.S. 635, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987) ………….. 35

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986)…………………………………………...17, 18, 41

*Calamia v. City of New York,*
   879 F.2d 1025 (2d Cir. 1989) …………………………………...18, 19

*Callan v. State,*
   73 N.Y.2d 731 (1988) ………………………………………………..31

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 91 L. Ed. 2d 265 (1986)………………………………18

*Chimel v. California,*
   395 U.S. 752 (1969)………………………………………………….27

*Colon v. City of New York,*
   60 N.Y.2d 78, 468 N.Y.S.2d 453(1983)…………………………….. 25

*Coolidge* v. *New Hampshire,*
   403 U.S. 443 (1971) …………………………………………….... 29

*Cox v. County of Suffolk,*
   780 F. Supp. 103, 108 (E.D.N.Y. 1991)…………………………...31

*Curley v. Village of Suffern,*
   268 F.3d 65(2d Cir. 2001) ………………………………………..20

*Curry v. City of Syracuse,*
   316 F.3d 324 (2d Cir. 2003) ………………………………………..41

Page

*D'Angelo v. Kirschner,*
   288 Fed. Appx. 724 (2d Cir. 2008)…………………………………… 30

*Giannullo v. City of New York*
   322 F. 3d 139 (2d Cir. 2003)………………………………………….. 15

*Fabrikant v. French,*
   691 F.3d 193 (2d Cir. 2012) ……………………………………… 42

*Harlow v. Fitzgerald,*
   457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)………….. 35

*Hunter v. Bryant,*
   502 U.S. 224 (1991)…………………………………………………… 36

*Illinois v. Andreas,*
    463 U.S. 765 (1983) ……………………………………………………25

*Janetka v. Dabe,*
   892 F.2d 187 (2d Cir. 1989) ………………………………………34

*Johnson* v. *United States*,
   333 U.S. 10 (1948)………………………………………………….. 29

*Kent v. Katz,*
   312 F.3d 568 (2d Cir. 2002)…………………………………………..34

*Kinzer v. Jackson,*
   316 F.3d 139 (2d Cir. 2003)………………………………………….31

*Krause v. Bennett,*
   887 F.2d 362 (2d Cir. 1989) ……………………………………….. 24

*Loeb v. Teitelbaum*,
   77 A.D.2d 92 (1980) ………………………………………………… 30

*Lowth v. Town of Cheektowaga,*
   82 F.3d 563 (2d Cir. 1996) ………………………………………….20, 31

*Luthe v. City of Cape May,*
   49 F. Supp. 2d 380, 395 (D.N.J. 1999) …………………………….33

Page

*Malley v. Briggs,*
   475 U.S. 335 (1986) ………………………………………………36

*Manganiello v. The City of New York,*
   612 F.3d 149, (2d Cir. 2010)………………………………..25, 36

*Maryland v. Pringle,*
   540 U.S. 366 (2003)…………………………………………….30

*Matter of Kimberly H*,
   196 A.D.2d 192; 609 N.Y.S.2d 990 (1994)……………………..35

*Maxwell v. City of New York,*
   156 A.D.2d 28, 554 N.Y.S.2d 502 (1st Dep't 1990)……………31

*McDonald* v. *United States*,
   335 U.S. 451(1948)……………………………………………… 29

*McClellan v. Steven Smith*
   439 F.3d 137 (2d Cir. 2006)…………………………………….45

*Miller v. Wolpoff & Abramson, LLP*,
   321 F.3d 292 (2d Cir. 2003)…………………………………….14

*Mistretta v. Prokesch,*
   5 F. Supp.2d 128 (E.D.N.Y. 1998) ………………………. 22, 44

*Payton v New York*
   445 U.S. 573 (1980) …………………………………….16, 29

*Posr v. Doherty,*
   944 F.2d 91(2d Cir.1991) …………………………………17, 33

*Quarles v. General Motors Corp. (Motors Holding Div.),*
   758 F.2d 839 (2d Cir. 1985) ………………………………… 44

*Raila v. United States*
   355 F.3d 118 (2d Cir. 2004) ………………………………… .4

Page

*Ricciuti v. N.Y.C. Transit Authority,*
   124 F.3d 123 (2d Cir. 1997)……………………………………38, 40

*Roe v. City of Waterbury*,
   542 F.3d 31 (2d Cir. 2008)……………………………………………18

*Rounseville v. Zahl,*
   13 F.3d 625 (2d Cir. 1994)……………………………………………18

*Singer v. Fulton County Sherriff,*
   63 F.3d 110 (2d Cir. 1995)……………………………………………20

*Smith v. Springer,*
   859 F.2d 31 (7th Cir. 1988) …………………………………………39

*Thomas v. Roach,*
   165 F.3d 137 (2d Cir. 1999)………………………………………….. 40

*United States ex rel Moore v. Koelzer,*
   457 F.2d 892, (3d Cir. 1972)…………………………………………39

*United States v. Agurs,*
   427 U.S. 97 (1976)……………………………………………………39

*United States v. Gandia,*
   424 F. 3d 255 (2nd Cir. 2005) ………………………………………28

*United States v. Rabinowitz,*
   339 U.S. 56 (1950) …………………………………………………27

*United States v. Rem,*
   38 F.3d 634 (2d Cir. 1994)……………………………………………45

*United States v. Sultan,*
   463 F.2d 1066 (2d Cir. 1972) ………………………………………22

Page

## STATUTES

28 U.S.C. §1291……………………………………………………1

28 U.S.C. § 1331……………………………………………………1

28 U.S.C. § 1343……………………………………………………1

42 U.S.C. § 1983……………………………………………...1, 3, 39

42 U.S.C. § 1985……………………………………………………1

42 U.S.C. §1988 ……………………………………………………1

New York Penal Law 190.80-2 …………………………………….. 10

New York Penal Law 155.30-1 …………………………………… 10, 35

New York Penal Law 165.45-2 ……………………………………...10

## RULES AND OTHER AUTHORITIES

Fed. R. Appeal Practice 3-4 …………………………………………… .1

Fed. Rules of Civil Proc. Rule 54(b) …………………………………14

Fed. Rules of Civil Proc. Rule 56 ………………………………3, 4, 41

Fed. R. Civ. P. 56(c) …………………………………………………18

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant alleged in the Complaint that the district court has subject matter jurisdiction in her civil rights claim pursuant to United States Constitution; 28 U.S.C. §§ 1331 and 1343; and 42 U.S.C. §§ 1983, 1985 and 1988.

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 in that a final judgment was entered in the United States District Court for the Eastern District of New York on March 21, 2014 dismissing the remainder of all claims in the plaintiff's complaint and the Notice of Appeal was timely filed with the district court on April 15, 2014 pursuant to Fed. R. Appeal Practice 3-4.

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Whether the district court correctly held that there was probable cause for plaintiff's arrests and prosecution.

2. Whether the arresting police officers who made a warrantless entry into plaintiff's residence to her arrest could proceed to spend time to search the plaintiff's adjourning room that is outside her immediate place of arrest while looking for a mail box key, unrelated to the reason for her arrest.

3. Whether the district court was correct to have taken over the function of weighing the evidence and making determinations on substantial matters of evidence of facts at the summary judgment motion stage instead of reserving them for the jury at the trial of the action.

4. Whether the district court misconstrued the law and the purport of the Court Order leading to the arrest of the plaintiff on December 28, 2009 for contempt.

## **STATEMENT OF THE CASE**

Plaintiff commenced this action pro se against the City of New York and several New York Police Department Officers under 42 U.S.C. § 1983 alleging false arrest, malicious prosecution and illegal search of herself and her bedroom, and against the City for failure to properly train and supervise the defendant police officers. Plaintiff later retained her present attorney who amended the Complaint JA-47. After discovery the defendants moved for summary judgment requesting a dismissal of all of plaintiff's claims under Rule 56 of the Fed. Rules of Civil Proc., and the plaintiff cross-moved for judgment on liability. JA-26, 27.

By a decision rendered on October 28, 2013 the district court dismissed all of plaintiff's claims except the claim relating to illegal search of her apartment SPA-1-21. Plaintiff brought an application for a reconsideration JA-460. By a decision dated December 3, 2013 the district court refused the application as being untimely and lacking merit JA-464. During the pre-trial conference on the remaining claim on March 14, 2014 the parties consented to a final judgment being entered, dismissing the entire claims so that plaintiff's attorney may bring an appeal that would incorporate all the other claims earlier on dismissed. JA-479-483). By a decision entered on March 21, 2014 the district court dismissed the plaintiff's remaining claim JA-487. This appeal followed.

# STATEMENT OF FACTS[1]

This case arose out of two events that happened on December 14, 2009 and December 28, 2009 resulting in the arrests of the plaintiff and also in her prosecution by the defendants.

### A. December 14, 2009 Arrest and Prosecution of plaintiff.

Ms. Peggy Morris, the plaintiff/appellant, had for over 9 (nine) years continuously and exclusively resided with her domestic partner, Mr. Osborne Miller in his residence at 163-25 130 Avenue, Apt. 1F Jamaica NY 11434. Mr. Osborne Miller never made a criminal complaint against the plaintiff relating to any aspect of the incident leading to plaintiff's arrest JA-36 paras. 2-3; JA. 401 paras. 2-3. In the evening of December 14, 2009 when the plaintiff entered into her residential apartment police officers led by the defendant Sergeant Edward Silvestre arrested the plaintiff and took her to the precinct to answer to an allegation by Mr. Osborne Miller's two sons, Eric and Dave Miller, relating to unauthorized possession and use by plaintiff of her partner's debit card. JA-103.

---

[1] Since the district court dismissed the claims of the plaintiff pursuant to Fed. R. Civ. P. 56, this Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff" *Raila v. United States* 355 F.3d 118, 119 (2d Cir. 2004)

**Complaint from witnesses with clear**
**motives for false accusation**

In a nutshell this is a case about two sons who never had a proprietary interest in their father's bank account yet went to the police to report that the plaintiff who had been their father's live in girlfriend of over nine (9) years was stealing from their father's account. Defendant police officers who had knowledge of previous animosity by the two sons against their father's girlfriend came into his apartment he shared with plaintiff and arrested her over their father's protests.

Dave Miller, supported by his brother Eric Miller, (hereafter "Miller brothers") brought the complaint resulting in the arrest of plaintiff on December 14, 2009 for alleged unauthorized possession and use by plaintiff of an ATM belonging to their father Mr. Osborne Miller. The two sons had developed frosty relationship with the plaintiff and their father. JA-116-117. The defendant police officers who arrested the plaintiff knew that the plaintiff was a live in girlfriend of Osborne Miller and that she was residing alone with him as at the time she was arrested. JA-244, 198.

Defendant police officers also knew of the animosity of the complainant witnesses against the plaintiff in that the plaintiff had on November 18, 2009 made a 911 call when the Miller brothers were throwing away plaintiff's belongings as they were forcefully and illegally evicting her from the premises. Sergeant

Silvestre was among the police officers that responded and on arrival he stopped the forced illegal eviction of the plaintiff and advised the Miller brothers to rather go through the housing court than take the laws into their hands JA. 101-102, 119

The catalyst for the complaint by the Miller brothers was that Mr. Dave Miller who had an unauthorized possession of his father's ATM card was secretly using it to make illegal withdrawals. To stop this theft of his money by his son Mr. Osborne Miller personally went to the Chase bank and changed his ATM debit card and the pin number JA.161. He then handed over to the plaintiff a copy of the new ATM card to enable the plaintiff make withdrawals for him for his use at the time his health was failing him. JA.171. Eric Miller admitted in a sworn testimony at the housing court that his father went to the bank and obtained a new debit card on December 5, 2009. JA.351, 349. He also admitted that his brother Dave Miller was taking thousands from their father's account. JA.374-375.

When the Miller brothers noticed that the pin of the debit card had been changed Dave Miller invaded his father's residence, swooped on the plaintiff and forcefully snatched her purse and took a copy of the new ATM card his father had given to the plaintiff. JA. 170. He went to the defendant police officer James Dameron with the ATM card he retrieved from the plaintiff and lodged a report that the plaintiff had an unauthorized possession of his father's ATM debit card and was making withdrawals with it. He further alleged that he was an authorized

user of the account and that his father was allegedly in an incapacitated position when the plaintiff without permission changed the bank card. He handed over to Mr. Dameron an ATM card which still had an activation sticker on it and also clearly bore only the name of Osborne Miller on it. JA. 237-240,394-396.

**Fabrication of evidence and missteps by**
**<u>James Dameron prior to the arrest of the plaintiff:</u>**

Defendant James Dameron acknowledged he was the investigating and arresting officer. JA-236-237 and that he received an ATM card bearing the name of plaintiff's partner Mr. Osborne Miller from Dave Miller JA- 239. He was aware that both plaintiff and Mr. Osborne Miller were living together JA- 244 and filled out an arrest form stating that the plaintiff was living with Mr. Osborne Miller as his "girlfriend" JA- 62 but admitted he never bothered to speak with the plaintiff's live in boyfriend about the complaint. JA-239.

He testified that he concluded that plaintiff's boyfriend was incapacitated based on a verbal representation he received from Dave Miller and never bothered to cross-check it. JA- 241.

He filled out a complaint form in which he falsely stated that Mr. Osborne Miller (with whom he never spoke or communicated with) represented to him that he would prosecute the plaintiff, his live in girlfriend on the complaint. JA- 333, 246-247.

James Dameron further executed a document jointly with Dave Miller wherein it was falsely asserted that the plaintiff used Dave Miller's name and social security number to obtain credit or merchandize and in consequence Dave Miller authorizes the defendants to investigate and prosecute the plaintiff. Mr. Dameron personally executed the document as a witness on a standard form which contained a caution against knowingly filing a false report. JA- 330-332, 285-288.

Mr. Dameron proceeded to send out a radio run for robbery as the crime the plaintiff was suspected of committing. The radio run was channeled to defendant Sergeant Edward Silvester to proceed to plaintiff's residence for robbery. JA-192.

**Unauthorized entry and search of plaintiff's**
**private residence.**

Sergeant Silvestre was approaching the plaintiff's residence with intention to effect arrest at a crime scene JA- 204. At the scene Sergeant Silvester met other police officers but he was the highest ranking officer and the supervisor there. JA-194. He entered the apartment without any invitation. Though a Rochdale apartment complex locksmith was changing the lock on the door Sergeant Edward Silvestre bypassed him and unilaterally moved into the private apartment without an invitation. JA- 110-111, 119. Plaintiff was seated on a bed in the bedroom and her domestic partner was lying down on a hospital bed in the living room at the time. JA-114.

On entering the apartment Sergeant Silvestre and the other officers ignored Osborne Miller and proceeded to spend time searching the plaintiff's adjoining personal room, looking for a mail box key at the request of the Miller brothers who had made unsuccessful prior efforts to retrieve it from the plaintiff and had requested the defendant police officers to search plaintiff's room and retrieve it for them. JA- 351, 114, 36 para 19 & 403 para 19.

Defendant police officer Dameron who filled out the complaint form indicated therein that "canvas" or search was conducted at the premises JA- 333. In his deposition testimony Mr. Dameron admitted that "canvass" means "search was conducted". JA-247-248, 49 para 10.

**Arrest of plaintiff over objections of**
**her domestic partner Mr. Osborne Miller**

At the time plaintiff was being arrested and taken away her domestic partner Mr. Osborne Miller raised his voice from his bed in opposition and shouted "stop" "stop", and "you all stop" to the cops, but he was ignored. JA- 49 para 11, 340. Though plaintiff's partner Osborne Miller was on a sick bed at the time because of his failing health condition, having just been diagnosed with terminal cancer JA-49 para 8 yet he remained lucid at all times. His son Eric Miller acknowledged that on December 5, 2009 he was at the bank to change the debit card which resulted in stopping his other son Dave Miller from having access to the account. JA- 349,

351. Plaintiff testified that Mr. Osborne Miller went to the bank on his accord and changed the card after giving the bank his photo identity. JA-168. She further testified that on December 14, 2009 he was able to speak and that he spoke with the nurse in the morning and called out to the police in the evening and spoke coherently. JA-106-107. The District Attorney's office acknowledged later that there was no evidence of dementia on the part of Mr. Osborne Miller contrary to the impression they had. JA-327-329.

**Prosecution of plaintiff on three count felony charges
made possible by documents prepared by defendants
<u>during the arrest of the plaintiff.</u>**

At the police precinct 113th where the plaintiff was being processed for arraignment in the criminal court the defendant police officer James Dameron told the plaintiff "They don't have a case, don't say anything." JA- 122. Yet plaintiff was eventually arraigned on a three count complaint signed by the same Police Officer James Dameron. The first count was for identity theft in the first degree under New York Penal Law 190.80.2. The second count was for grand larceny in the fourth degree under New York Penal Law 155.30-1. The third count was for criminal possession of stolen property in the fourth degree under New York Penal Law 165.45-2. JA- 388-393.

All of these charges/counts in the criminal complaint were predicated on the fabricated report and false complaint framed by the defendant police officer James

Dameron in collaboration with Dave Miller. Mr. Dameron conceded in his deposition testimony that the information in the District Attorney's file on the case were based on "facts and materials" he supplied to the District Attorney's office. JA-259,262.

The District Attorney's office was to later indicate that there was no evidence of either dementia on the part of Mr. Osborne Miller or absence of consent to the plaintiff in the use of the debit card in question. JA-327-329. Plaintiff made several court appearances and was prosecuted till January 11, 2011 when all the counts were dismissed JA- 41 para 41, 405 para 41.

**B. December 28, 2009 subsequent arrest of plaintiff lacked probable cause and was <u>dismissed and sealed prior to arraignment.</u>**

Plaintiff was again arrested on 12/28/2009 but this time by the defendant police officers Krystin Graziano and Rosa Jordan. The arrest was for an alleged violation of a housing court Order of protection and for contempt of court Order which allegedly granted the Miller brothers unrestricted access to the same premise occupied exclusively by the plaintiff and her partner. JA-42 para 46, 405 para 46.

The build up to this arrest started from 12/15/2009 when the plaintiff was released on self-recognizance after being arraigned in the Criminal Court following her arrest of 12/14/2009. She went back to the premises to continue caring for her

partner but discovered that she could not gain access as Mr. Dave Miller had used the opportunity of her arrest to enter the apartment and lock her out. She called 911 and police officers from the same 113th precinct that had just arrested and arraigned her responded. But they could not help her regain access as Dave Miller refused to let them in. Plaintiff suddenly became homeless and had to commence a lockout proceeding at the Queens Housing Court NY to successfully obtain an Order to regain access into the premises. JA- 397-399. During this process her domestic partner died without plaintiff being at his bedside. JA- 125-129, 51-52, 41 para 40, 405 para 40.

The Miller brothers used the same housing court Order that granted plaintiff access back to the premises to lodge a complaint against the plaintiff, contending that it gave them uninterrupted access to plaintiff's premises. Though plaintiff had described the court Order as not valid as it was not accompanied with a warrant JA- 139 she indicated that she always gave the Miller brothers access in the company of the police as she would not want to be alone with them in the apartment JA- 135. Significantly Eric Miller testified in the housing court proceeding that based on the same court Order he and his brother had had access to the apartment for about five times after 12/18/2009 when it was issued and that on each occasion the police from the precinct accompanied them. JA- 43 para. 54, 406 para 54. He further stated that the police helped them on an occasion to kick and

12

bang severally at the plaintiff's door as his brother drilled through the top lock of the premises JA- 44 para 55, 406 para 55. Sergeant Nicole Ruggiero who was the supervising approving officer in respect of the complaint leading to the arrest of the plaintiff on December 28, 2009 acknowledged that the arrest of the plaintiff was unjustified on the papers presented and under the circumstance JA-43 para. 52, 406 para 52. Plaintiff received a letter dated 12/28/2009 from the District Attorney's office indicating that the office has dismissed her arrest of December 28, 2009 prior to her arraignment at the criminal court and that the record had been sealed. JA-400.

### C. <u>The District Court's Rulings:</u>

At the end of discoveries the defendants moved for summary judgment and the plaintiff cross-moved for partial summary judgment on liability. By a decision rendered on October 28, 2013 Judge John Gleeson granted defendants' motion on all claims except for the claim against defendant Sergeant Edward Silvestre for illegally searching plaintiff's bedroom and dismissed plaintiff's cross-motion for summary judgment. SPA 1-21. Plaintiff applied for a reconsideration of the decisions on the summary judgment motions JA-460. In a decision dated December 3, 2013 the application was refused as being untimely and lacking merit. JA- 464-466.

During the pre-trial conference on March 14, 2014 parties consented to the district court entering judgment under Federal Rules of Civil Proc. Rule 54(b) while preserving the plaintiff's claim for unlawful search in order for the plaintiff to appeal all the claims earlier dismissed instead of just proceeding to trial on the limited claim that was left after the summary judgment motion. JA-479-483. By an Order made on March 18, 2014 the district court stated that an appeal could only be properly brought if the plaintiff consents to a dismissal of the remaining claim with prejudice. JA-485. After consulting with and receiving the consent of the attorney to the defendant plaintiff's counsel gave the consent to the district court. JA- 486.

On March 21, 2014 the court entered a final judgment granting defendants' summary judgment motion and dismissed the plaintiff's remaining claim. SPA-22. The present appeal JA-488 is against the orders and decisions dismissing the plaintiff's claims.

## <u>SUMMARY OF THE ARGUMENT:</u>

This Court's **de novo** standard of review of the district court's ruling on summary judgment, *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003), is particularly applicable here since the district court, in considering the defendants' summary judgment motion acknowledged that "The nature of the relationship between Dave Miller and Morris, which was

known to Dameron before the arrest, makes the question of whether probable cause existed a close one" SPA-12.

One of the central issues presented in this appeal is whether in the absence of probable cause to arrest and prosecute the plaintiff the district court was justified to rely on arguable probable cause to grant qualified immunity to the defendant police officers. Where, as in this case, Mr. Dameron had been involved in conduct amounting to fabrication of evidence and he was an integral part of a team of officers working on this case then under the imputed knowledge doctrine, all the officers involved in the arrest or search of the plaintiff are presumed to collectively share the specific information Mr. Dameron had that formed the basis of the arrest and search of the plaintiff, See *Giannullo v. City of New York* 322 F. 3d 139 (2d Cir. 2003). Consequently all the defendant police officers must lose the benefit of the doctrine of qualified or good faith immunity.

At the time of plaintiff's arrest the defendant Sergeant Silvestre searched her person and her room, an area beyond her immediate area looking for a mail box key at the request of the Miller brothers. The district established there was no probable cause to extend the search beyond the

plaintiff's immediate area to search the room for any purpose, including to obtain a mail box key. SPA-16.

The district court was however wrong to hold that there was consent given to the defendant Sergeant Edward Silvestre to enter plaintiff's premises to arrest her on felony charges without warrant and that no *Payton* claim was being pressed. SPA-14 footnote 5. See *Payton v New York 445 U.S. 573 (1980)* [Per the United States Supreme Court, *Fourth* and *Fourteenth Amendments* prohibited the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest]

Even if arguendo there was probable cause to arrest the plaintiff, some intervening facts disproved the presence of probable cause to prosecute. There was abundant evidence showing that plaintiff's partner, though weak and on a hospital bed, had been lucid, was talking, engaged in outdoor activities in recent days, and in fact called out to the police to "stop" "stop" and "you all stop" at the time the plaintiff was arrested and was being taken away from their premises. JA-106-107, 340, 49.

The district court further failed to analyze each of the three distinct felony charges against the plaintiff to know if they all passed the test of

probable cause but merely stated that the District Attorney added those counts. SPA-5. The court ought to "separately analyze the charges claimed to have been maliciously prosecuted." See *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991).

The district court was wrong to have come to conclusions of fact that Sergeant Sivlestre and the arresting officers saw Mr. Osborne Miller on the hospital bed and that the sight was also a confirmation of Mr. Osborne Miller's incapacity when none of these conclusions flowed from the evidence. SPA-13. It is not the function of the district court to analyze and weigh evidence of facts at the summary judgment stage. See *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986).

Plaintiff's second arrest pursuant to an alleged violation of housing court order of December 28, 2009 lacked probable cause and in the very least showed an ongoing pattern of abuse of plaintiff by the defendant police officers under the color of governmental authority. It is noteworthy that the District Attorney wrote to the plaintiff indicating that prior to her arraignment on the charge of contempt the case had been dismissed and sealed. JA-400.

# ARGUMENT

## I.  PROPER STANDARD OF REVIEW IS DENOVO

This Court reviews a grant of summary judgment *de novo*. *Roe v. City of Waterbury,* 542 F.3d 31, 35 (2d Cir. 2008).  Summary judgment is properly granted when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. All ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## II. DECEMBER 14, 2009 ARREST LACKED PROBABLE CAUSE

Probable cause exists "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir. 1989*)*; see also *Rounseville v. Zahl,* 13 F.3d 625, 629-30 (2d Cir. 1994). Being that "The existence of probable cause must be determined on

the basis of the totality of the circumstances," *Calamia v. City of New York,*

(supra) 879 F.2d at 1032.

For a number of reasons hereunder stated the district court was in

error to have found that probable cause existed for the arrest of the plaintiff

on December 14, 2009.

### A.    Complaint leading to the arrest of Plaintiff came from a witness with clear motive to be biased.

The district court acknowledged the presence of clear motive for a

false accusation by Dave Miller, the alleged complainant witness in the

following way:

> "The nature of the relationship between Dave
> Miller and Morris, which was known to Dameron before
> the arrest, makes the question of whether probable cause
> existed a close one. A son accusing his father's live-in
> girlfriend of stealing money from his dying father is the
> sort of preexisting relationship between an accuser and
> an accused that presents a clear motive for a false
> accusation and cast doubt on the veracity of the
> complaint" SPA- 12-13.

During the oral argument of the motion at the district court on October

15, 2013 Judge John Gleeson stated: "One thing you have going for you on

the probable cause issue is sometimes there is a relationship between the

victim and the perpetrator, the subject of the complaint, that puts a cop on

notice he can't just rely on the victim. And I think you have one of the situations here, which makes this a closer call" JA-414.

Generally probably cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offence has been committed by the person to be arrested." *Singer v. Fulton County Sherriff,* 63 F.3d 110, 118 (2d Cir. 1995). However this is inapplicable if circumstances raise doubts on such information received. "when information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubts as to the person's veracity" See *Curley v. Village of Suffern,* 268 F.3d 65, 70 (2d Cir. 2001). Also in determining the existence of probable cause, courts look at "those facts available to the officer at the time of the arrest and immediately before it" *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir. 1996).

Prior to the arrest of the plaintiff both Sergeant Silvestre and Mr. Dameron knew that plaintiff lived exclusively with her domestic partner, the father of the Miller brothers JA-198, 244. Defendant Sergeant Silvestre had on a previous occasion come to the premises and stopped the Miller brothers from forcefully evicting the plaintiff from the premises. JA-50, 100-101.

Plaintiff also stated that the Miller brothers who never had accepted her relationship with their father were at a stage barred from the premises by their father Mr. Osborne Miller JA-116. These facts are sufficient to raise doubts as to the complainant witness person's veracity.

However, the district court proceeded to give three reasons to get around these circumstances in order to establish the existence of probable cause. First the district court indicated that rather than making a phone call the complainant witness personally went to the precinct to lodge a formal complaint and hand over the bank card to the police. Second, that the Miller brothers were both "adamant" about the complaint when the cops arrived to arrest the plaintiff severally hours after the complaint was initially made, and lastly that the sight of the plaintiff's live in domestic partner on the hospital bed served as a corroborative evidence providing "indicia of reliability". SPA- 13.

This is a reversible error as it is based on unsupportable standards that significantly lowered the threshold requirements for caution prior to arresting a defendant when the complaining witness has a clear motive to be untrustworthy. It is distinguishable from this Court's decision that "An untested informant's story may be corroborated by other facts that become

known to the [arresting agent], even if they corroborate only innocent aspects of the story." *United States v. Sultan,* 463 F.2d 1066, 1069 (2d Cir. 1972) because in the instant case the arresting defendant police officers already knew of the frosty relationship prior to the receipt of the complaint. Besides the alleged corroborative evidence do not corroborate anything of substance relating to the basis of the arrest of the plaintiff.

In his earlier decision in the case of *Mistretta v. Prokesch***,** 5 F. Supp.2d 128, 133 (E.D.N.Y. 1998) Honorable John Gleeson applied this Court's established standard when there exists motive to be biased. Therein a complaint was made against the plaintiff by his spouse in the midst of their divorce proceeding. Based on the fact that the risk of false accusation was apparent the police officer did not immediately proceed to arrest but first went to the house, questioned the plaintiff and then decided not to arrest because he was not sure of the credibility of the complaint. Further, when a subsequent complaint was made by a daughter of the marriage, against the plaintiff that her furniture was damaged no arrest was made till the officer personally went to the scene and eventually arrested the plaintiff when he saw a corroborative evidence of damage to the furniture at the scene.

## B. Nature of the complaint received necessitated
## <u>further inquiry before arresting the plaintiff</u>

There exist circumstances that compel the making of further inquiries prior to arresting plaintiff. They include the fact that the ATM card Mr. Dameron received was pretty new and bore only the name of M. Osborne Miller, plaintiff's partner on it. The name of Dave Miller who allegedly claimed he was a joint account owner was not on the card. JA-394-396, 239. The card still had an activation sticker on it, raising the obvious probability that it had not been activated and been used in making the alleged withdrawals. Despite the existence of a compelling need to have made an effort to get in touch with the owner of the card to confirm his alleged incapacitated condition Dameron relied only on a verbal representation that he was incapacitated as shown from this portion of Mr. Dameron's testimony:

> Q. What was the basis of your conclusion that he was incapacitated for which you
> couldn't speak with him?
> A. I was told.
> Q. Was there a way you wanted to make sure it wasn't a lie, that someone could
> walk in and say I'm here on behalf of somebody incapacitated, arrest
> somebody? Did you cross check to make sure you were not being led
> to doing a wrong thing?
> A. I don't recall.
> Q. You don't recall doing that?

A. I don't recall if I did.
Q. What would help you to recall? Is there any form of
evidence that may assist
    you in the process?
A. Not that I'm aware of.            JA-241

The district court correctly noted that the complaint was received "on the morning of December 14, 2009" SPA-11 and that the arrest was in the evening when plaintiff returned "At around 7:00 pm" SPA-3, "several hours after Dave Miller had lodged the initial complaint" SPA 13. A reasonable person could have utilized this enormous time lapse to have investigated the matter further or at least seek to speak with the plaintiff's domestic partner or obtain a warrant.

A later memo from the District Attorney's Office stated that Dameron failed to alert the Elder Fraud Unit of its office prior to the arrest, as plaintiff's partner was an elder JA-327. This shows that Mr. Dameron would at least have proceeded more cautiously prior to the arrest.

Generally once an officer is in possession of information sufficient to establish probable cause he is not under an obligation to conduct further investigation or sit as prosecutor, judge or jury but simply apprehend the suspect. See *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir. 1989). However this is subject to the exception that "the failure to make a further inquiry

when a reasonable person would have done so may be evidence of lack of probable cause." *Colon v. City of New York,* 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 468 N.Y.S.2d 453, 455 (1983).

In the case of *Manganiello v. The City of New York,* 612 F.3d 149 at 163 (2d Cir. 2010) this Court gave reasons for imposing a duty of further investigation on a police officer Agostini as follows:

> "In sum, looking at the evidence as a whole, the jury could permissibly infer that Agostini was determined simply to make a case against Manganiello, and that in order to do so Agostini refrained from making inquiry into other possible suspects, ignored evidence that was inconsistent with his belief that Manganiello was guilty…."

It is important to note that Sergeant Silvestre who physically arrested the plaintiff shares as much of the information as Mr. Dameron had because "where law enforcement authorities are cooperating in an investigation . . . , the knowledge of one is presumed shared by all." *Illinois v. Andreas,* 463 U.S. 765, 771 n.5, 103 S. Ct. 3319, 77 L. Ed. 2d 1003 (1983). In the light of these it is wrong for the district court to have decided that "..Morris has not presented sufficient evidence to show that Dameron had reason to doubt Dave Miller's veracity" SPA-11.

## III    DEFENDANTS EXCEEDED BOUNDS IN
     THE PROCESS OF THE WARRANTLESS
     <u>ARREST OF DECEMBER 14, 2009.</u>

The defendant police officers exceeded their bounds when they made

a non-consensual and warrantless entry into plaintiff's premises to search

and arrest her.

### A. Search of plaintiff's bedroom for a mailbox
     key at the request of Dave and Eric Miller
     <u>is beyond allowable limit.</u>

Excerpts from plaintiff's deposition testimony shows the extent and

nature of the search conducted in the plaintiff's bedroom by the defendant

Sergeant Edward Silvestre while looking for a mailbox key to hand over to

the Miller brothers at their request.

> Q. You had said either Sergeant Silvestri or another
> officer searched the apartment?
>  A. They searched the bedroom.
>  Q. The bedroom. Was the bedroom the only area they
> searched?
>  A. Yes.
>  Q. Was this when you and Eric Miller were inside the
> bedroom?
>  A. Yes.
>  Q. Do you know what he was look for?
>  A. Eric was telling him to look for a mailbox key.
>       ……..
>  Q. Did Sergeant Silvestri recover anything from the
> bedroom?
>  A. I don't think so.      JA- 114-115

The district court rightly came to a conclusion that it was wrong for Sergeant Silvestre to conduct such a search. SPA-16.

Eric Miller testified on oath at the housing court that as the plaintiff's room was being searched they waited patiently because the police had promised to give the mail box key to them. He described the search like "finding a needle in a haystack." because plaintiff had a lot of "junk" in her room. JA-351, 36 para 19, 403 para 19.

In the complaint form Dameron indicated that "canvas" was conducted at the premises JA-333 and in his deposition testimony he admitted that "canvass" means "search was conducted" JA- 248.

A search incident to arrest finds justification in the reasoning that such a search is to prevent the arrested individual from destroying evidence or using a weapon against the arresting officer. In *United States v. Rabinowitz* , 339 U.S. 56 (1950), the Supreme Court held that the area within the "immediate control" of the arrestee could be searched but that such a search should not extend beyond that point. Further in *Chimel v. California*, 395 U.S. 752 (1969), the Supreme Court held that even for a routine search of rooms other than that in which an arrest occurs, absent a well-recognized exceptions, a search warrant is required (See P. 763). Accordingly the scope

of such a reasonable search is limited to "arrestee's person and the area from

within which he might gain possession of a weapon or destructive evidence"

See *United States v. Gandia,* 424 F. 3d 255, 261 (2nd Cir. 2005).

A permissible limited search of the person of the arrestee does not

extend to a right or justification for defendants to invade plaintiff's room and

areas beyond her immediate control. Certainly a search of plaintiff's

bedroom specifically for a mail box key to be handed over to the Miller

brothers cannot be justified under any condition.

B. **Non-consensual warrantless entry to make felony arrest in plaintiff's residence is a breach of plaintiff's *Payton* right.**

Plaintiff testified that the defendant Sergeant Edward Silvestre made a

nonconsensual entry into her apartment where she was living exclusively

with her partner to arrest her even though a locksmith was at the door of her

apartment changing the locks of the premises. JA-111, 119. During the

argument of the motions for summary judgment plaintiff's attorney, in

response to the district court's questioning, stated that the plaintiff was

alleging the *Payton* claim for the search and arrest of the plaintiff JA-426.

On further probing by the court plaintiff's attorney conceded that when facts

are viewed in the light presented by Sergeant Silvestre who stated that he

never entered the apartment then the *Payton* claim would not apply. JA-427-

428. Consequently plaintiff's *Payton* claim ought to be upheld, especially now that facts are viewed in light most favorable to the plaintiff.

The United States Supreme Court has consistently held that except in such special situations, the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant and that to be arrested in the home involved not only the invasion attendant to all arrests, but also an invasion of the sanctity of the home, which was too substantial, absent exigent circumstances, even when it was accomplished under statutory authority and when probable cause was present. See *Payton* v. *New York*, 445 U.S. 573 at 588-599 (1980); *Johnson* v. *United States*, 333 U.S. 10, 13-15 (1948). The Supreme Court further explains that the placement of this checkpoint between the Government and the citizen implicitly acknowledges that an "officer engaged in the often competitive enterprise of ferreting out crime," *Johnson* v. *United States,* 333 U.S. 10, at 14, may lack sufficient objectivity to weigh correctly the strength of the evidence supporting the contemplated action against the individual's interests in protecting his own liberty and the privacy of his home. *Coolidge* v. *New Hampshire,* 403 U.S. 443, at 449-451 (1971); *McDonald* v. *United States*, 335 U.S. 451, 455-456 (1948).

### III.    THE PROSECUTION OF THE PLAINTIFF FOLLOWING THE DECEMBER 14, 2009 <u>ARREST LACKS PROBABLE CAUSE.</u>

For purposes of the tort of malicious prosecution, probable cause has been defined as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of" or whether "a discreet and prudent person would be led to the belief that a crime had been committed by the person charged." *Loeb v. Teitelbaum, 77 A.D.2d 92, at 103, 432 N.Y.S.2d at 494 (1980)*; *D'Angelo v. Kirschner,* 288 Fed. Appx. 724, 726-27 (2d Cir. 2008). In substance, all probable cause definitions rely on reasonable grounds to believe that a person is guilty of an offense. *See Maryland v. Pringle,* 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003). For a number of reasons there is a clear lack of probable cause to have prosecuted the plaintiff for the arrest of December 14, 2009.

### A. Protests by plaintiff's domestic partner against her arrest in his presence is a subsequent material <u>evidence defeating probable cause to prosecute.</u>

The protests by plaintiff's partner against her arrest was a subsequent material evidence defeating probable cause to prosecute the plaintiff. JA-49, 340. The verbal protest against the arrest of plaintiff by the alleged

complainant/victim served to reinforce absence of probable cause for both the arrest and the prosecution of the plaintiff.

Under New York law, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." *Cox v. County of Suffolk,* 780 F. Supp. 103, 108 (E.D.N.Y. 1991); *see also Maxwell v. City of New York,* 156 A.D.2d 28, 554 N.Y.S.2d 502 (1st Dep't 1990). In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact. *See Callan v. State,* 73 N.Y.2d 731, 532 N.E.2d 96, 535 N.Y.S.2d 590 (1988). This Court has consistently applied this standard. See *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir. 2003); *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir. 1996).

During the oral argument, plaintiff's counsel brought up this matter, but the district court chose to explain it away by saying that sometimes victims of crime may choose to recant and that this does not affect probable cause. JA-418. But it is inapplicable here because Mr. Osborne Miller was rather a victim of biased complaint by the Miller brothers against his partner which bias was known ahead of time by the arresting officers in ways to

have put them on notice to require them to take all precautions in establishing probable cause prior to arresting the plaintiff.

The District Attorney's subsequent memo contains the following: "…I spoke with Dave Miller, informing him of the status of the case, and explaining to him that we would likely be dismissing the case in the interest of justice on the next date, as we lacked sufficient evidence to prove the defendant's lack of permission or authority." JA-328.

### B. Separate analysis of the 3 count criminal charges plaintiff was prosecuted on show <u>absence of probable cause for each of them</u>

Plaintiff was prosecuted on three count criminal charges. JA-388-393 but the district court found probable cause to arrest and prosecute plaintiff on only one of the counts by saying "The facts provided by Dave Miller to Dameron established each of the elements of Criminal Possession of Stolen Property…" SPA-11 and then concluded that "Morris malicious prosecution claim against Dameron is also foreclosed by the existence of probable cause" SPA-14. All through the decision there was no reference to or analysis of the other two charges.

As there were three distinct charges underlying the prosecution at issue here, this Court has held that the district court must "separately analyze

the charges claimed to have been maliciously prosecuted." See *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991); See also *Luthe v. City of Cape May,* 49 F. Supp. 2d 380, 395 (D.N.J. 1999).

Even if, for the sake of argument, one agrees with the district court that the defendants had probable cause to arrest and prosecute the plaintiff on a charge of criminal possession of stolen property, plaintiff was also prosecuted, and defendants signed supporting documents for her prosecution, on charges of identity theft in the first degree, a more serious class "D" felony charge punishable by up to 7 years in state prison. She was also prosecuted on a charge for grand larceny in the fourth degree, a class "E" felony punishable by up to 4 years in state prison. Probable cause for criminal possession of stolen property does not preclude a malicious prosecution claim as to either the identity theft in the first degree or the grand larceny in the fourth degree for a number of reasons.

First, probable cause for criminal possession of stolen property does not preclude a malicious prosecution claim as to the identity theft in the first degree charge because the charged offense is a greater charge than the offense for which the police had probable cause. See *Posr v. Doherty,* 944 F.2d 91, at 100 (2d Cir.1991) "As disorderly conduct is a lesser charge than

resisting arrest and assaulting an officer, . . . we should not allow a finding of probable cause on this charge to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior."; See also *Kent v. Katz,* 312 F.3d 568, 578 (2d Cir. 2002) (Newman, J., concurring)

Second, probable cause for criminal possession of stolen property does not preclude a malicious prosecution claim as to grand larceny in the fourth degree because the two charges involve "distinct" elements and "distinct" conduct. The elements of each charge are different; neither charge is a lesser included offense of the other. See *Janetka v. Dabe,* 892 F.2d 187, at 190 (2d Cir. 1989).

Further under New York law plaintiff would never have been convicted on the charge for grand larceny in the fourth degree as the instrument and method of withdrawal was an ATM card and not a credit card. Mr. Dameron who signed the charging document swore to the following in the charging document:

> "DEPONENT IS FURTHER INFORMED BY COMPLAINANT D. MILLER THAT ALL OF THE ABOVE MENTIONED TRANSACTIONS OCCURRED FROM AN ATM MACHINE LOCATED AT 165-40 BAISLEY BOULEVARD, IN THE COUNTY OF QUEENS"    JA-392

Consequently, as the alleged withdrawals were ATM withdrawals and not credit card withdrawals or purchase of merchandize no charges could be founded

under New York Penal Law § 155.30-1 for grand larceny in the fourth degree

because in New York an Automated Teller Machine Card is not "Debit Card" or

"Credit Card" to ground charges under Penal Law § 155.30-1. See *Matter of*

*Kimberly H*, 196 A.D.2d 192; 609 N.Y.S.2d 990; 1994 <u>N.Y.</u> App. (1994).

### C. Qualified immunity not applicable when evidence is fabricated and there is deliberate violation of established statutory or constitutional rights <u>which a reasonable person would have known.</u>

The district court was wrong to have held that "Even if Dave Miller's

complaint did not give rise to probable cause to arrest Morris, at the very

least the events established arguable probable cause" SPA-13 and for which

also the plaintiff's malicious prosecution claim against Mr. Dameron is

foreclosed SPA-14.

The doctrine of qualified immunity extends to official conduct that

"does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known," *Harlow v. Fitzgerald,* 457

U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982), insofar as it was

objectively reasonable for such officials to believe, even if mistakenly, that

their conduct did not violate such rights. *Anderson v. Creighton,* 483 U.S.

635, 641, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987).

Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent. See, e.g., *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

This Court in *Manganiello v. The City of New York,* 612 F.3d 149 at 165 (2d Cir. 2010) upheld the district court's denial of motion as a matter of law based on qualified immunity "…given the jury's findings that Agostini misrepresented the evidence to the prosecutors, or failed to pass on material information, or made statements that were false, and engaged in such misconduct knowingly..".

The above statement in *Manganiello* case is applicable to the conduct of Mr. Dameron who generated and delivered the materials and facts with which the District Attorney made up its case file JA-259, 262. He agreed that the description of the plaintiff as an alcoholic in the District Attorney's file was from the information he supplied but denied knowledge of how he came to the conclusion that the plaintiff was an alcoholic JA-262. In contrast

Sergeant Silvestre who arrested plaintiff stated he had no evidence that the plaintiff was an alcoholic JA-210. Mr. Dameron admitted that the District Attorney's file stated that a civilian witness named Mr. Osborne Miller (plaintiff's partner) indicated that "the full family is against Morris, Peggy" even though no one spoke with Mr. Osborne Miller at any point in time. JA-272. The District Attorney's file contains an entry showing that Dave Miller was a "complainant non eyewitness" yet Dameron had packaged the case against the plaintiff as if Dave Miller had been an eyewitness to the entire event. Plaintiff testified that at the precinct she met with Mr. Dameron who said to her "They don't have a case, don't say anything" yet the same Mr. Dameron made up false statements he transmitted to the District Attorney's office to secure the prosecution of the plaintiff. JA-122-123. Mr. Dameron jointly executed a document with Dave Miller, the complainant witness JA-330-332 indicating that the social security number of Dave Miller (complainant witness) was used by the plaintiff to wrongly obtain credit card or merchandize without his permission, even though he had in his possession an ATM/debit card (not credit card) in the name of only Osborne Miller. The said document contains the following words:

> I, Dave Miller, hereby attest that my name, social security number, and other personal information was used to obtain credit card or merchandise without my permission. I authorize the New York City Police

> Department to contact the above company/credit(s) to discuss the account(s) in question. I further authorize the company creditor(s) to release any and all information on the account relevant to the investigation and forward any documentation to the investigative unit concerned. I understand that the New York City Police Department will vigorously investigate this allegation. I further realize that the person committing this crime may be arrested and prosecuted. JA-332

Mr. Dameron further admitted filling out complaint form representing that plaintiff's live in partner, the actual owner of the bank card indicated to him that he would prosecute the plaintiff despite not ever having met or spoken with him JA-246-247, 333. In the same complaint form he indicated that the complaint he received against the plaintiff was for criminal possession of stolen property JA-253 but sent out a radio run for robbery against the plaintiff JA-192. During the argument of the motion the district court agreed it was wrong for Mr. Dameron to have sent out a radio run for armed robbery JA-416.

It has been held severally that no matter how lawful or objectively reasonable an arrest is it does not give an arresting officer or his fellow officers the license to deliberately manufacture false evidence against an arrestee. "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'" *Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 130 (2d Cir. 1997) quoting

38

*United States v. Agurs,* 427 U.S. 97, 104, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976).

The harm occasioned by such an unconscionable action is redressable in an action

for damages under *42 U.S.C. § 1983. United States ex rel Moore v. Koelzer,* 457

F.2d 892, 893-94 (3d Cir. 1972); see also *Smith v. Springer,* 859 F.2d 31, 34 (7th

Cir. 1988).

The harm to the plaintiff is obvious. The entire charge against the plaintiff

would not have been possible if not for the false entries that her domestic partner

wanted to prosecute her and also that "the full family is against Morris, Peggy". In

addition the specific charge for identity theft in the first degree would not have

been filed if Dameron had not cosigned the document with Dave Miller indicating

that plaintiff had used Dave Miller's social security number to obtain merchandize

without his permission. The charges for grand larceny in the first degree and for

criminal possession of stolen property would not have been brought if not for the

framing of documents showing lack of consent. Absence of support for these

fabricated evidence was the reason the District Attorney decided to discontinue the

prosecution of the plaintiff after over a year of several court appearances by the

plaintiff as a criminal defendant. JA-327-329.

An important point to note is that even Eric Miller's testimony on oath in the

housing court extolled the plaintiff and showed that she had been of immense

assistance to the Miller brothers' father in ways that confirms Mr. Osborne Miller

would not have initiated the complaint against the plaintiff for any of the three charges. Here are excerpts:

> "She was there every day. She was helping him and I - - I - - I - - even as angry as I am right now, I will say truthfully that since the time my father came back home, when he came out of the hospital she had been more than supportive and had been helping out with my father 100 percent, more so than anybody else. It was a surprise to the family how much she did for my father during his - - his illness…" JA-359

The district court noted that plaintiff was arraigned for criminal possession of stolen property in the fourth degree and that it was the District Attorney's office that later added the other two counts for first degree identity theft and fourth degree grand larceny. SPA-5. However this does not make any difference in so far as the additional charges emanated from the file and documentations already prepared and sent over to the District Attorney by Mr. Dameron. He remains liable in so far as he played the vital role of initiating the prosecution by preparing the documents in support of the charges and forwarding them to the prosecutors. See *Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 130 (2d Cir. 1997).

This Court has held that "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness" *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir. 1999). This case presents one such ground to reverse the grant of qualified immunity.

## V.    THE DISTRICT COURT JUDGE COMMITTED A REVERSIBLE ERROR IN LAW BY PROCEEDING TO WEIGH IN ON FACTS

The Supreme Court has held that there is no requirement that in deciding the summary judgment motion the trial judge make findings of fact because under the Fed. Rules of Civil Proc. *Rule 56*, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial and whether a proper jury question was presented. See *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986). This Court has also held that the resolution of genuine factual issues is inappropriate on motions for summary judgment based on qualified immunity. *See Curry v. City of Syracuse,* 316 F.3d 324, 337 (2d Cir. 2003). It however turned out that on a few instances as stated below the district court did not abide by this principle in its decision.

### A. There was no evidence to support the district court's findings of facts relating to Mr. Osborne Miller lying on a hospital bed as proof of incapacity.

The district court's decision never referenced the evidence of the verbal opposition of Mr. Osborne Miller to the plaintiff's arrest but rather concluded that "Finally, when the arresting officers observed Osborne Miller incapacitated in a hospital bed at the apartment before Morris was arrested,

part of Dave Miller's complaint was corroborated, further supporting the veracity of his accusation against Morris......." SPA-13. This factual finding by the district court does not provide the details as to how the officers came to the conclusion regarding the degree and extent of "incapacitation" by merely seeing Mr. Osborne Miller on the hospital bed without any evidence to support it. This is a one sided finding that totally disregarded the evidence of the verbal opposition by Mr. Osborne Miller to the arrest of his girlfriend whom he needed most at the time of his illness.

This Court has held that just as inculpatory evidence must be weighed, contemporaneous exculpatory evidence must also be considered when determining the existence of probable cause. See *Fabrikant v. French,* 691 F.3d 193, 214 (2d Cir. 2012).

The district court further made a specific finding of fact that Sergeant Silvestre saw Mr. Osborne Miller on the hospital bed when it stated that "....arresting officers observed Osborne Miller incapacitated in a hospital bed......(hospital bed was visible to Silvestre when he entered the apartment)" SPA-13. In contrast Sergeant Silvestre testified he never entered inside the premises, never observed Mr. Osborne Miller and never had any interaction with him at all. JA-200, 211. In fact both attorneys for the parties indicated during the oral argument of the summary judgment motions that

Sergeant Silvestre denied seeing Mr. Osborne Miller on the hospital bed. JA-417. It is a reversible error for the district court to make such a finding when it is unsupported by any evidence.

### B. The district court was wrong to have made a factual finding that a locksmith at the door invited in the police into the premises to arrest the plaintiff.

Plaintiff testified that one Jeffrey Strong a locksmith in the premises was changing the locks of the premises and had the door open when the police came into the premises JA-111 and earlier said of the defendant Sergeant Silvestre "He didn't have permission to come in. Osbourne and myself were the only occupants of that apartment for ten years. I didn't give him permission to enter…" JA-110.

But the district court in its decision stated that "Sergeant Edward Silvester, along with two or three other unknown police officers, arrived at the apartment and were invited in by a locksmith who was changing the lock on the front door" SPA-3 without stating the basis for the conclusion.

There is no indication that Mr. Jeffrey Strong who never resided in the apartment or had legal rights to it had a discussion with the officers resulting in his inviting them in. He never had a common authority to permit the officers access into the premises. To hold that he invited them in is to go contrary to the established authorities and the standard followed by

Honorable John Gleeson in the case of *Mistretta v. Prokesch,* 5 F. Supp. 2d 128, 133 which is a case involving a daughter whose name is on the deed. Therein Judge Gleeson held that she had as much right as the plaintiff to reside in the premises and therefore had a common authority to invite the cops to arrest the plaintiff in the premises. But the facts cannot be stretched to make it applicable to the locksmith and then use it as a basis to deny plaintiff of her *Payton* claim as the district court did.

In considering a summary judgment motion the district court is not permitted to speculation or conjecture as to the true nature of the facts, See *Quarles v. General Motors Corp. (Motors Holding Div.)*, 758 F.2d 839, 840 (2d Cir. 1985)

**C. The district court misinterpreted some portions of plaintiff's deposition testimony to arrive at factual <u>conclusions relating to the arrest of Dec. 28, 2009</u>**

The court wrongly picked up isolated portions of plaintiff's deposition transcript to conclude that "On several occasions in December of 2009, Morris denied Dave and Eric Miller access to the apartment…[W]hen [Dave and Eric Miller] came …I would never let them in.")  SPA-17. However, an overview of that portion of the transcript shows plaintiff stating that on several occasions Dave and Eric Miller would come to the apartment to

threaten her and though she was taking steps to vacate the order she would not feel safe allowing them in when she was all alone and would always call 911 to be present whenever they wanted to come into the premises as she would not want to be in the apartment with them without police officers. JA-135. She never said she refused them access on several occasions in the past. Even Eric Miller testified that he and his brother had access to the apartment in the company of police officers on several occasions after December 18, 2009 when the said Court Order was issued. JA-43 para 54, 406 para 54.

This Court consistently holds that the making of findings and resolving factual conflicts are matters properly within the province of a jury. *United States v. Rem,* 38 F.3d 634, 644 (2d Cir. 1994) ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.") See also *McClellan v. Smith* 439 F.3d 137 at 149 (2d Cir. 2006) ("Resolution of genuine factual issues is inappropriate on motions for summary judgment based on qualified immunity"

## VI.   THE ARREST OF DECEMBER 28, 2009 WAS BASED ON A WRONG INTERPRETATION OF A COURT ORDER.

Plaintiff agrees with the district court that there is no disputes regarding any material facts relating to the arrest of December 28, 2009, therefore it is correct to decide the question of probable cause as a matter of law. SPA-16. However, the district court misapplied the law in arriving at the conclusion that probable cause existed.

Even though the said court order gave Eric and Dave Miller "unrestricted access to the apartment as representatives of the estate of Osborne Miller" it was not an open ended access but limited to only an occasion which is stated to be "to afford respondents an opportunity to safeguard any valuable possessions of their father" The relevant portion of the housing court order is reproduced below:

> "Given the respondents' concern regarding their father's property, and as representatives of their father's estate, the Court directs that respondents may retain a copy of all keys for the apartment, as they also have a right to unrestricted access to the apartment as representatives of the estate of Osbourne Miller. The Court will also direct that the keys be provided by 4:00PM, Monday December 21, 2009 *to afford respondents an opportunity to safeguard any valuable possessions of their father"* [italics supplied]   JA-398-399

46

An unrestricted access for an opportunity to safeguard valuables cannot translate to an unrestricted access at all times, irrespective of whatever interpretation either the arresting police officers or the plaintiff place on the court order.   If the Miller brothers had gained access to the premises on several occasions in the past in the company of police officers after December 28, 2009 when the said Court Order was issued one wonders how then there would there be probable cause to arrest the plaintiff on December 28, 2009 based on the same court order.  JA-43 para 54, 406 para 54.

In fact the Miller brothers had given evidence that they had, with the assistance of the police, on an occasion in the past kicked and banged severally at the plaintiff's door as they engaged in drilling through the top lock of plaintiff's premises JA-44 para 55, 406 para 55.

Following her arrest the plaintiff was detained at the 113th Precinct, was later transferred to the Criminal Court and held overnight till about noon the following day. JA-140. The District Attorney's office, knowing the lack of probable cause for the arrest issued a letter dated December 28, 2009 indicating that prior to the arraignment of the plaintiff it had dismissed the complaint JA-400.

## <u>CONCLUSION</u>

For all the reasons stated above the plaintiff-appellant Peggy Morris respectfully requests this Court to reverse the district court's orders granting the defendant/appellees' summary judgment motion and denying plaintiff-appellant's cross-motion for partial summary judgment on liability.

Dated: July 24, 2014.

*Sgd/Joseph N. Obiora*
JOSEPH N. OBIORA
Law Office of Joseph N. Obiora LLC
Attorney for Plaintiff/Appellant
PEGGY MORRIS
146-08 Hillside Avenue, 2nd Fl.
Jamaica, NY 11435
(718) 297-3705

To:
Tahiri M. Sadrieh
Assistant Corporation Counsel
City of New York
100 Church Street
New York, NY 10007
(212) 442-0832

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that this brief was produced in Times New Romans ( a proportionally-spaced typeface), in 14-point type (inclusive of footnotes), and contains 10, 551 words (based on the Microsoft Word count function).

Dated: July 24, 2014.

<u>*Sgd/Joseph N. Obiora*</u>
JOSEPH N. OBIORA

SPECIAL APPENDIX

## TABLE OF CONTENTS

PAGE

Memorandum and Order of the Honorable John Gleeson Appealed
From, dated October 28, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA-1

Judgment Appealed From, dated March 21, 2014 . . . . . . . . . . . . . . . . . . . SPA-22

UNITED STATES DISTRICT COURT                    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

PEGGY MORRIS,

                                    Plaintiff,          MEMORANDUM
                                                        AND ORDER
            - versus -                                  12-CV-3959

THE CITY OF NEW YORK, et al.,

                                    Defendants.

APPEARANCES:

        JOSEPH N. OBIORA
                146-03 Hillside Avenue, 2nd Fl.
                Jamaica, NY 11435
        By:     Joseph N. Obiora
                *Attorney for Plaintiff*

        CORPORATION COUNSEL OF THE CITY OF NEW YORK
                100 Church Street
                New York, NY 10007
        By:     Michael A. Cardozo
                *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

            Peggy Morris brings this action against the City of New York (the "City") and

several New York Police Department officers under 42 U.S.C. § 1983.  She alleges that the

officers are liable for false arrest, malicious prosecution and conducting an illegal search, and

that the City is liable based on its failure to properly train and supervise its officers.  These

claims stem from two incidents in which Morris was arrested, first on December 14, 2009, and

again on December 28, 2009.  Defendants have moved for summary judgment on all claims and

plaintiff has cross-moved for summary judgment on all claims except for unlawful search and

seizure.  For the reasons set forth below, defendants' motion is granted on all claims except for

the claim against Sergeant Edward Silvestre[1] for illegally searching her bedroom.  Plaintiff's motion is denied.

## BACKGROUND

### A.  Factual Background

The following facts are taken from Local Rule 56.1 statements, affidavits, deposition excerpts, and other documentary evidence submitted by the parties.  Each side has moved for summary judgment.  Unless otherwise noted, these facts are either not in dispute or are construed in the light most favorable to the party opposing the motion under consideration.

In December 2009, Morris lived in an apartment at 163-25 130th Avenue, Jamaica, New York, with Osborne Miller.  Deposition of Peggy Morris ("Morris Dep.") Ex. 3 at 9:25-10:4.  Morris was not listed as a legal occupant of the premises on the income affidavit of the apartment[2] but had resided there continuously as Osborne Miller's domestic partner since 2000.  *Id.* at 10:2-10.  In December 2009, Osborne Miller was terminally ill, incapacitated and could speak only with great difficulty.  Second Am. Compl. ¶ 8.  He had two adult sons, Dave and Eric Miller.  *Id* ¶ 9.  On the morning of December 14, 2009, Dave Miller used a key to enter the apartment his father shared with Morris and searched through the contents of Morris's purse.  Ex. 3 at 33:13-25, 34:7-16, 40:15-20 (Morris Dep.).  Inside the purse Dave Miller found a Chase bank card issued to Osborne Miller.[3]  *Id.* at 40:11-17.

Dave Miller went to the 113th Precinct and made a complaint to Police Officer James Dameron, claiming that Morris had unlawful possession of the bank card and had made

---

[1]    I use the spelling set forth in the defendants' motion papers.  Silvestre's name is also spelled "Silvestri" and "Silvester" elsewhere in the record.
[2]    An income affidavit is required by the New York City Housing Authority to determine eligibility for Section 8 rental assistance and contains questions regarding who is a resident in a household.
[3]    There is some disagreement regarding whether the card in question was a debit card, an ATM card or a credit card.  These distinctions are immaterial for the purposes of deciding the motion before me.

unauthorized withdrawals from the account associated with the card while Osborne Miller was

incapacitated.  Deposition of Officer Dameron ("Dameron Dep.") Ex. 5 at 8:9-10:16.  Dave

Miller asserted that he was an authorized user on the account but that Morris was not.  *Id.* at

51:1-7.  He also presented Dameron with the bank card in question, in the name of Osborne

Miller, and explained that he had found it in Morris's purse.  *Id.* at 10:4-16.

   At around 7:00 P.M., Morris returned to the apartment and either Dave or Eric

Miller called the police.  Ex. 3 at 39:6-12 (Morris Dep.).  Sergeant Edward Silvestre, along with

two or three other unknown police officers, arrived at the apartment and were invited in by a

locksmith who was changing the lock on the front door.  They informed Morris they were there

to investigate the complaint made against her by Dave Miller.  *Id.* at 39:9-22; Second Am.

Compl. ¶ 8.  Once the police entered the apartment, Morris denied having used the card but the

Miller brothers were "adamant" that she had.  Deposition of Edward Silvestre ("Silvestre Dep."),

Ex. 4 at 18:6-9.  At this point, Morris's version of events differs from the defendants'.  Morris

claims that one or more of the police officers searched the bedroom she was in as well as her

person, looking for Osborne Miller's mailbox key.  Ex. 3 at 50:9 (Morris Dep.) ("They searched

the bedroom.").  Next, according to Morris, Silvestre asked Morris to accompany them to the

precinct "to explain some things . . . ."  Ex. 3 at 48:13-14 (Morris Dep.).  When Morris asked if

she was required to go, Morris claims that Silvestre replied "If you don't go voluntarily you will

be arrested."  *Id.* at 49:1-2.

   Defendants insist, on the other hand, that no search of either Morris or her

apartment was conducted and that Silvestre actually sent an officer to stop either Dave or Eric

Miller from reentering the apartment to look for a mailbox key they wanted to obtain.  Ex. 4 at

18:11-19:15 (Silvestre Dep.).  According to defendants, Silvestre next asked Morris as well as

Eric and Dave Miller to accompany him to the precinct to further investigate the complaint

against Morris, but that no threat of arrest was made against Morris if she decided not to come.

*Id.* at 26:5-27:8.

It is undisputed that Morris was not handcuffed or formally arrested at the

apartment. *See* Second Am. Compl. ¶ 9; Ex. 3 at 49:18-19, 55:25-56:3 (Morris Dep.). At the

precinct, Dave Miller informed Dameron that between December 7, 2009, and December 13,

2009, six withdrawals, totaling $3,960, had been made from his father's Chase bank account.

Ex. C (Queens County Criminal Court Complaint dated 12/15/09) ("12/15/09 Criminal

Complaint"). All of these withdrawals had been made from an ATM machine located at 165-40

Baisley Boulevard in Jamaica, New York. *Id.* Dave Miller asserted that he was an authorized

user of the account but had been out of state during that time period, and that Osborne Miller, the

only other person authorized to access the account, was incapacitated due to his illness. *Id.* He

also informed Dameron that on or about December 5, 2009, a new debit card ending in 9715 was

issued in Osborne Miller's name for the account. *Id.* Dave Miller told Dameron that he believed

Morris had fraudulently caused the bank card to be issued and then had used the card to make the

unauthorized withdrawals. *Id.* The bank card he had found in Morris's purse and brought to

Dameron earlier that day ended in 9715. *Id.*

Morris was asked by an unknown detective whether she would appear on the

surveillance video of the ATM machine withdrawing money with Osborne Miller's bank card, to

which she replied "Yes." Ex. 3 at 56:3 (Morris Dep.). Morris was then handcuffed to the wall

and placed under arrest by either the unknown detective or Dameron. *Id.* at 56:20-57:24.

Dameron later fingerprinted Morris and prepared her arrest paperwork, charging her with

Criminal Possession of Stolen Property in the Fourth Degree, in violation of New York Penal

Law § 165.45.  Omniform System Arrest Report dated 12/14/2009, Ex. 2 ("Arrest Report

12/14/2009").  The District Attorney's office later added charges of First Degree Identity Theft

and Fourth Degree Grand Larceny.  Pl. Br. 9.  Morris was released on her own recognizance on

December 15, 2009.  Second Am. Compl. ¶ 20.  Osborne Miller passed away on December 16,

2009.  *Id.* ¶ 22.

        After being released from custody, Morris attempted to regain access to the

apartment she had shared with Osborne Miller, but Dave and Eric Miller had changed the lock

and would not allow her to enter the premises.  Pl. Rule 56.1 Stmt. ¶ 36.  Morris commenced a

"lock-out proceeding" in the Queens County Housing Court, alleging that she had been forcibly

and unlawfully removed from the apartment.  Second Am. Compl. ¶ 21; Queens County Housing

Court Order, Ex. G ("Housing Court Order").  On December 18, 2009, an order was issued

granting Morris access to the apartment and directing Dave and Eric Miller to provide Morris

with the appropriate keys.  Ex. G (Housing Court Order).  The order also granted Dave and Eric

Miller "a right to unrestricted access to the apartment as representatives of the estate of Osborne

Miller."  *Id*.  On several occasions in December of 2009, Morris denied Dave and Eric Miller

access to the apartment.  Ex. 3 at 71:11-21 (Morris Dep.) ("[W]hen [Dave and Eric Miller] came

. . . I would never let them in.").

        On December 28, 2009, Police Officers Kristyn Graziano and Rosa Jordan, as

well as two unnamed officers, arrived at the apartment along with Dave and Eric Miller.  *Id.* at

67:8-68:22.  Graziano showed a copy of the court order to Morris and explained that under the

order Morris was required to admit Dave and Eric Miller onto the premises as representatives of

their father's estate.  *Id.* at 69:1-4.  Morris again refused to grant the Miller brothers entry to the

apartment, claiming that the court order was "void" and that she was in the process of getting it

5

vacated.  *Id.* at 71:12-21.  Graziano and Jordan proceeded to arrest Morris on a charge of

Criminal Contempt of Court Order, in violation of New York Penal Law § 215.50.  Second Am.

Compl. ¶ 29.  Morris was released the next day and no charges were brought against her.  Ex. 3

at 76:19-20 (Morris Dep.).

All counts against Morris stemming from her December 14, 2009, arrest were

dismissed on January 11, 2010, and the court order giving Dave and Eric Miller unrestricted

access to the apartment was vacated in March 2010.  Second Am. Compl. ¶ 26; Ex. 3 at 71:25

(Morris Dep.).

B.  *Procedural Background*

Morris commenced this action on August 2, 2012, alleging claims under 42

U.S.C. § 1983 for false arrest, malicious prosecution, and illegal search, as well as municipal

liability for failure to supervise and failure to train.  In her Second Amended Complaint, Morris

alleges false arrest and illegal search against Dameron and Silvestre based on her arrest on

December 14, 2009; malicious prosecution against Dameron stemming from the same arrest;

false arrest against Jordan and Graziano based on her December 28, 2009, arrest; and the above-

mentioned *Monell* claims against the City.[4]  On August 30, 2013, after discovery had concluded,

defendants moved for summary judgment on all claims and Morris cross-moved for summary

judgment on all claims except for the claim of illegal search and seizure by Silvestre.  I heard

oral argument on October 15, 2013.

DISCUSSION

A.  *The Summary Judgment Standard of Review*

---

[4]      Plaintiff's Second Amended Complaint also listed as defendants: Deputy Inspector Krystal
Johnson, Police Officer Johnny Hines, Police Officer Cassandra McKay Brown, Detective Sherman Pearson, 113th
Squad Detectives #1-6, 113th "John Doe" Police Officers #1-12, 113th "Jane Doe" Police Officers #1-6.  Morris
withdrew all claims against these defendants in her Memorandum in Opposition to Defendants' Motion for
Summary Judgment.

A party is entitled to summary judgment upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether material facts are in dispute all ambiguities are resolved and all inferences are drawn in favor of the non-moving party. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. *Adams v. Dep't of Juvenile Justice of City of New York*, 143 F.3d 61, 65 (2d Cir. 1998). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Because "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact," *Kerzer*, 156 F.3d at 400, the non-moving party cannot survive a properly supported motion for summary judgment by resting on the pleadings "without offering 'any significant probative evidence tending to support the complaint.'" *Anderson*, 477 U.S. at 249 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)).

B. *42 U.S.C. § 1983*

42 U.S.C. § 1983 imposes civil liability on any party who, "under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution" of the

United States. *K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health of State of New York*, 189 F.3d 273, 280 (2d Cir. 1999) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)). Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). The "core purpose of § 1983 is 'to provide compensatory relief to those deprived of their federal rights by state actors.'" *Hardy v. New York City Health and Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (quoting *Felder v. Casey*, 487 U.S. 131, 141 (1988)).

      1.  *False Arrest*

Claims brought under § 1983 are guided by the tort law of the forum state. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). Thus, "[a] § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). The elements of a false arrest claim under New York law are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer*, 63 F.3d at 118 (alteration in original, internal quotation omitted). If probable cause existed the arrest is considered privileged and "is a complete defense to an action for false arrest whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (internal quotation and citation omitted); *see also Singer*, 63 F.3d at 118-19 ("There

SPA-9

can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

"Probable cause to arrest exists 'when the [arresting officers] have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested.'" *United States v. Ceballos*, 812 F.2d 42, 50 (2d Cir.1987) (quoting *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983)) (alteration added). In determining whether probable cause existed, a court must consider "the facts available to the officer at the time of the arrest," *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997), and examine the totality of the circumstances. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119. Of course, some purported victims of crimes may have axes to grind, and certain preexisting relationships between the victim and the accused can raise doubts as to the victim's veracity. *See Mistretta v. Prokesch*, 5 F.Supp.2d 128, 133 (E.D.N.Y. 1998); *see generally* 2 Wayne A. LaFave, *Search and Seizure* § 3.4(a) (5th ed. 2012) (hereinafter "LaFave"). When this type of prior relationship exists and is known to the arresting officer before the arrest is made, the complaint alone may not establish probable cause, and further investigation may be necessary before a lawful arrest can be carried out. *See Mistretta*, 5 F.Supp.2d at 133; 2 LaFave, *supra*, § 3.4(a); ("'In those cases observed where the police knew or

became aware of such a prior relationship, they were hesitant to act without further investigation.'" (quoting Wayne A. La Fave, Arrest 277-78 (1965))).

      2.  *Malicious Prosecution*

      "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted); *see also Sankar v. City of New York,* 867 F. Supp. 2d 297, 309 (E.D.N.Y. 2012).  The elements of a malicious prosecution claim under New York law are: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice motivating defendant's actions.  *See Manganiello*, 612 F.3d at 160.

      3.  *Qualified Immunity*

      "[Q]ualified immunity shields government employees acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their conduct violated clearly established rights of which an objectively reasonable official would have known." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996).

> Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was "arguable probable cause" to arrest.  Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."

*Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

C. *Claims based on the December 14, 2009, Arrest*

    1. *Claims Against Dameron*

Viewing the facts in the light most favorable to Morris, I find that she was arrested in her apartment when she alleges Silvestre told her that if she did not accompany him to the precinct she would be arrested.  Ex. 3 at 49:1-2 (Morris Dep.); *see California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("An arrest requires either physical force . . . or, where that is absent, submission to the assertion of authority.") (emphasis omitted).  While it is undisputed that Dameron was not present at the apartment, he was a key participant in her arrest.  Dameron received the complaint from Dave Miller and, believing the complaint established probable cause, set the wheels in motion for Morris's arrest later that day.  *See* Ex. 5 at 14:13-16 (Dameron Dep.) ("Q: I'm saying you received a complaint, you had probable cause.  What would be the next step after that?  A: To arrest [Morris].");  Pl. Rule 56.1 Stmt. ¶ 9.

It is undisputed that on the morning of December 14, 2009, Dave Miller told Dameron that Morris had unauthorized possession of Osborne Miller's bank card and had used it to make unlawful withdrawals from the associated account, an account on which Dave Miller claimed to be the only other authorized user.  Ex. 5 at 8:9-10:16 (Dameron Dep.).  The facts provided by Dave Miller to Dameron established each of the elements of Criminal Possession of Stolen Property, and Morris has not presented sufficient evidence to show that Dameron had reason to doubt Dave Miller's veracity.  Those who claim to be eyewitnesses or victims of crimes are among the most trustworthy sources of information since they can usually provide a first-hand, nonhearsay account of the criminal activity.  *See Curley v. Vill. of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's

veracity.") (internal citation omitted); *see also Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F.Supp. 351, 355 (S.D.N.Y. 1992) *aff'd*, 993 F.2d 1534 (2d Cir. 1993) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth.").

Morris further alleges that Dameron did not sufficiently investigate the accusations made against her before arresting her. However, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti*, 124 F.3d at 128; *see also Curley*, 268 F.3d at 70 ("[T]he arresting officer does not have to prove plaintiff's version wrong before arresting him."). Indeed, probable cause requires only a probability, or a "substantial chance" of criminal activity, not an actual showing of criminal activity. *Illinois v. Gates,* 462 U .S. 213, 244 n.13 (1983). The police are neither required nor equipped to adjudicate whether criminal conduct has actually occurred. Instead, they are tasked with determining whether probable cause exists to believe a particular person committed a particular crime. *See Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) ("Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.").

The nature of the relationship between Dave Miller and Morris, which was known to Dameron before the arrest, makes the question of whether probable cause existed a close one. A son accusing his father's live-in girlfriend of stealing money from his dying father is the sort of preexisting relationship between an accuser and an accused that presents a clear motive for a

false accusation and could cast doubt on the veracity of the complaint. *See Mistretta*, 5 F.Supp.2d at 133. On the other hand, there are facts here that tend to support Dave Miller's veracity and the existence of probable cause. First of all, instead of simply calling the police with an accusation against Morris, Dave Miller went personally to the precinct to lodge a formal complaint. He presented Dameron with the bank card in question, which constituted physical evidence of the crime. *See Singer*, 63 F.3d at 119. He told Dameron that he had found the card that same day in Morris's purse. In addition, when Silvestre and the officers under his command arrived at the apartment several hours after Dave Miller had lodged the initial complaint, both Miller brothers were "adamant" that Morris had made unauthorized withdrawals using Osborne Miller's bank card. Ex. 4 at 18:6-9 (Silvestre Dep.). Finally, when the arresting officers observed Osborne Miller incapacitated in a hospital bed at the apartment before Morris was arrested, part of Dave Miller's complaint was corroborated, further supporting the veracity of his accusation against Morris. *See Panetta v. Crowley*, 460 F.3d 388, 397 (2d Cir. 2006) (corroboration of complaint provides indicia of reliability); Ex. 3 at 51:4-7 (Morris Dep.) (hospital bed was visible to Silvestre when he entered the apartment). In sum, viewing the facts in the light most favorable to Morris, I conclude as a matter of law that there was probable cause to arrest her on December 14, 2009 for criminal possession of stolen property (Osborne Miller's bank card) even before she was taken to the precinct.

Even if Dave Miller's complaint did not give rise to probable cause to arrest Morris, at the very least the events established arguable probable cause. *See Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) ("[T]he court must grant police officers qualified immunity when the court concludes that the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality of the seizure."). Having concluded

13

that probable cause existed, it follows that I further conclude that, at the very least, reasonable officers could disagree as to whether there was probable cause to arrest. Accordingly, defendants' motion for summary judgment on Morris's false arrest claim against Dameron is granted on the additional ground of qualified immunity.

Morris's malicious prosecution claim against Dameron is also foreclosed by the existence of probable cause. *See*, *e.g.*, *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York."). And again, even if probable cause was absent at the initiation of criminal proceedings, Morris's claim of malicious prosecution would fail because Dameron at least had arguable probable cause, which provides him with qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 641, (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.").

2. *Claims Against Silvestre*

Morris claims that Silvestre subjected her to a false arrest and an illegal search.[5] As discussed above, there is a significant factual dispute regarding the actions of the police while in the apartment. According to Morris, Silvestre both arrested her in the apartment and subjected her and her bedroom to an illegal search before they left for the precinct. Ex. 3 at 50:10, 51:23-52:3 (Morris Dep.). For his part, Silvestre contends that Morris was not arrested at the apartment

---

[5]     It was made clear at oral argument that no *Payton* claim is being advanced by Morris, who I conclude for the purposes of the defendants' motion was arrested in her home. *See Payton v. New York*, 445 U.S. 573, 576 (1980) (Ordinarily, police are prohibited "from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest."). Even if a *Payton* claim were asserted, there is undisputed evidence that the officers were invited into the apartment. *See* Ex. 3 at 46:19-48:1 (Morris Dep.). As such, a *Payton* claim would fail.

because she voluntarily accompanied the police to the precinct.  Furthermore, Silvestre contends, her bedroom was not only not subjected to a search, but he actually *prevented* Osborne Miller's sons from conducting any search for the mailbox key they were looking for.   Ex. 4 at 18:11-19:15 (Silvestre Dep.).

As for Morris's motion, when the facts are viewed in the light most favorable to Silvestre, there was neither an arrest nor a search by him, and thus her motion on the false arrest claim is denied.

As for Silvetre's motion, I conclude for the reasons discussed above that even if he placed Morris under arrest at the apartment, that arrest was supported by probable cause.  For that reason and the additional reason of qualified immunity, which is also discussed above with respect to Dameron, Silvestre's motion for summary judgment on Morris's false arrest claim is granted.

Morris's claim that she was subjected to an illegal search is more nuanced.  The probable cause to arrest supported a search of Morris herself and of the areas within her reach at the time of arrest.  The rationale for such a search "incident to arrest" is to disarm the suspect and to "preserve evidence on his person for later use at trial."  *United States v. Robinson*, 414 U.S. 218, 234 (1973).  Accordingly, the scope of such a search is limited to "the arrestee's person and the area within his immediate control . . . the area from within which he might gain possession of a weapon or destructible evidence."  *United States v. Gandia*, 424 F.3d 255, 261 (2d Cir. 2005) (citing *Chimel v. California*, 395 U.S. 752, 763 (1969)) (internal quotation omitted).  To the extent Morris complains that she (or any place she could reach) was searched, the defendants' motion is granted.

15

However, Morris alleges that Silvestre searched more than just the area of the bedroom within her reach. Specifically, she testified at her deposition that two or three officers led by Silvestre "entered into the bedroom and they were searching around the bedroom . . . ." Ex. 3 at 48:11-12. Silvestre's argument that this claim should be dismissed because Morris has not sufficiently alleged that he personally participated in the search is unavailing. Morris stated that either Silvestre or another officer searched the bedroom for a key before she was taken to the precinct. *See* Ex. 3 at 50:7-12 (Morris dep.) ("Q: You had said either Sergeant Sylvestri or another officer searched the apartment? A: They searched the bedroom."); *see also id.* at 51 ("Q: Did Sergeant Silvestri recover anything from the bedroom? A: I don't know."). And Silvestre testified that he was the supervising officer on the scene. Viewing these facts in the light most favorable to Morris, a genuine issue of material fact exists regarding whether Silvestre or officers under his on-site supervision conducted an unlawful search of the bedroom that was both warrantless and beyond the bounds of the permissible search incident to arrest that was authorized. As a result, defendants' motion for summary judgment on this particular dimension of the illegal search claim is denied.[6]

D. *Claims Based on the December 28, 2009, Arrest*

Morris claims that she was subjected to a false arrest by Officers Graziano and Jordan on December 28, 2009, in violation of § 1983. There is no dispute regarding any material facts surrounding this arrest or the knowledge of the officers at the time the arrest was made. Thus, the question whether probable cause existed may be determined as a matter of law. *Weyant*, 101 F.3d at 852. Because I find that the arresting officers had probable cause to arrest

---

[6]    I do not consider the facts here to raise a legal issue of supervisory liability, but rather a question of whether Silvestre is liable for his direct participation in the alleged constitutional injury. *See Turkmen v. Ashcroft*, 915 F.Supp.2d 314, 333-334 (E.D.N.Y. 2013) (describing difference between direct and supervisory liability).

16

Morris for contempt of a court order, defendants' motion for summary judgment on this claim is granted.

It is undisputed that Morris refused to comply with a court order issued by a Queens County Housing Court that granted, *inter alia*, Dave and Eric Miller "unrestricted access to the apartment as representatives of the estate of Osborne Miller," Ex. G (Housing Court Order); Ex. 3 at 71:11-21 (Morris Dep.) ("[W]hen [Dave and Eric Miller] came . . . I would never let them in."). Graziano and Jordan arrived at the apartment based on a complaint made by Dave and Eric Miller that Morris would not allow them access into the premises. Pl. Rule 56.1 Stmt. ¶ 46; Ex. 21 (12/28/2009 Arrest Report). The officers showed the court order to Morris, explained that she was in violation of the order by not allowing the Miller brothers access to the apartment and asked Morris to allow them to enter. Ex. 3 at 69:1-10 (Morris Dep.). When Morris again refused to comply with the court order the officers arrested her for Criminal Contempt in the Second Degree in violation of N.Y. Penal Law § 215.50(3). Second Am. Compl. ¶ 29; Ex. 21 (12/28/2009 Arrest Report).

Penal Law § 215.50(3) prohibits "[i]ntentional disobedience or resistance to the lawful process or other mandate of a court except in cases involving or growing out of labor disputes . . . ." N.Y. Penal Law § 215.50(3) (McKinney). Morris argues that the violation of the court order was not sufficient to create probable cause to arrest her because the order did not contain an arrest clause and, in addition, was too vague to support a charge. Pl. Br. in Opposition 22. These arguments are without merit. First, the plain language of § 215.50(3), which is written broadly to criminalize disobedience to "lawful process or other mandate of a court," indicates that an arrest clause in a violated court order is unnecessary to provide probable cause for arrest under this statute. This interpretation is confirmed by the decisions of other

courts applying § 215.50(3), which have not required an arrest clause in the court orders that

were violated.  *See*, *e.g.*, *Rheingold v. Harrison Town Police Dep't*, 568 F.Supp.2d 384, 390

(S.D.N.Y. 2008) ("Under New York law, a person is guilty of criminal contempt in the second

degree when he wilfully disobeys a clear and definite court order."); *Holtzman v. Beatty*, 468

N.Y.S.2d 905, 907 (N.Y. App. Div. 1983) ("'In order to sustain a conviction for criminal

contempt for violation of a court's order the court's order must be specific and the violator must

be aware of such an order.'") (quoting *Matter of Rumaker,* 646 F.2d 870, 872 (5th Cir.1980)).

Second, despite Morris's unsupported and conclusory allegation to the contrary, I see nothing

vague in the court order, which grants Dave and Eric Miller "unrestricted access to the apartment

as representatives of the estate of Osborne Morris." Ex. G (Housing Court Order).  Furthermore,

as was the case with regard to Morris's claims of false arrest stemming from her December 14,

2009, arrest, even if there was not probable cause for her arrest on December 28, there was at

least arguable probable cause, which entitles Graziano and Jordan to qualified immunity.  *See*

*Escalera v. Lunn,* 361 F.3d at 743.

    E.  Monell *Claims Against the City of New York*

        In *Monell v. Dep't of Social Servs.*, the Supreme Court held that in certain

instances a municipality may be held liable for the tortious conduct of its employees.  436 U.S.

658 (1977).  However, "governments should be held responsible when, and only when, their

official policies cause their employees to violate another person's constitutional rights."  *City of*

*St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988); *see also Bd. Of County Comm'rs v. Brown*,

520 U.S. 397, 403 (1997) ("A municipality may not be held liable . . . solely because it employs

a tortfeasor.").  In sum, "[e]stablishing the liability of the municipality requires a showing that

the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in

addition, that their commission of the tort resulted from a custom or policy of the municipality."
*Askins v. Doe No. 1*, 727 F.3d 248 (2d Cir. 2013).

    Morris claims that the City is liable for injuries stemming from her arrests on
December 14 and 28, 2009, based on a failure to train and a failure to supervise, in violation of §
1983.  Second Am. Compl. ¶ 50-63.  She alleges that "[t]he City here maintained a custom that
allows officers to unconstitutionally arrest persons like the plaintiff without probable cause," and
"also does not have an effective training and retraining program to inculcate into the police
officers the need not to commit constitutional breaches of rights of citizens in the course of their
employment."  Pl. Br. at 27; Second Am. Compl. ¶ 60 ("The City has been alerted to the regular
used [sic] of false arrests by its police officers, but has nevertheless exhibited deliberate
indifference to such false arrests . . . .").  In support of these allegations, Morris points to a civil
suit against defendant Dameron and other officers that settled with an undisclosed monetary
payout to the plaintiff, an unrelated civil suit brought against Jordan that also settled, and another
settled civil suit against a non-defendant supervising officer.  Pl. Br. at 28.

    Even assuming that Morris did suffer a constitutional injury on December 14 or
December 28, 2009, her *Monell* claim against the City must fail because she does not produce
any evidence to show a policy or custom of the City that caused her alleged injuries.  "[A] local
government may not be sued under § 1983 for an injury inflicted solely by its employees or
agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury
that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694.
Morris's claims amount to assertions that the officers who arrested her made incorrect, on-the-
spot judgments that their actions were supported by the facts available to them.  Even if she were
correct in those assertions, there are no facts from which a reasonable jury could find that those

19

incorrect judgments were the result of a municipal policy or custom.  For this reason, Morris's

argument for the City's liability based on a theory of vicarious liability must fail.  *Connick v.

Thompson*, 131 S. Ct. 1350, 1359 (2011) ("[Municipalities] are not vicariously liable under §

1983 for their employees' actions.").

Morris has only provided conclusory allegations that the conduct she complains

of was the result of a custom or policy of the City.  *See Dwares v. City of New York*, 985 F.2d 94,

100 (2d Cir. 1993) ("The mere assertion . . . that a municipality has such a custom or policy is

insufficient in the absence of allegations of fact tending to support, at least circumstantially, such

an inference."), *overruled on other grounds*, *Leatherman v. Tarrant County Narcotics

Intelligence & Coordination Unit,* 507 U.S. 163 (1993).  The fact that two of the defendants as

well as a non-defendant supervising officer have had civil suits brought against them in the past

that resulted in settlements is not even evidence of wrongdoing, let alone that the City has a

custom or policy that fosters or results in wrongdoing.  Similarly, the claims of false arrest and

malicious prosecution alleged in Morris's complaint, even if true, do not constitute sufficient

evidence of a custom or policy to support a *Monell* claim.  *See Ricciuti*, 941 F.2d at 123 ("[A]

single incident alleged in a complaint, especially if it involved only actors below the policy-

making level, does not suffice to show a municipal policy.").  Thus, the lack of any evidence of a

municipal custom or policy necessitates granting defendants' motion for summary judgment on

Morris's *Monell* claim against the City.

CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is

granted on all claims except the illegal search claim against Silvestre.  Jury selection and trial of

that claim will commence at 9:30 a.m. on January 13, 2014.  A final pretrial conference will be

held on January 6, 2014, at 11:00 a.m.  Plaintiff's cross-motion for summary judgment is denied.

So ordered.


John Gleeson, U.S.D.J.


Dated:  October 28, 2013
        Brooklyn, New York

**SPA-22**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

| | |
|---|---|
| PEGGY  MORRIS, | JUDGMENT |
| | 12-CV- 3959 (JG) |
| Plaintiff, | |
| -against- | |

THE CITY OF NEW YORK, DEPUTY INSPECTOR
KRYSTAL JOHNSON, SERGEANT EDWARD
SILVESTRE, OFFICER ROSA JORDAN (SHIELD
829), POLICE OFFICER KRISTYN GRAZIANO
(SHIELD 24802), POLICE OFFICER JAMES
DAMERON, POLICE OFFICER JOHNNY HINES
111 (SHIELD 2003), POLICE OFFICER CASSANDRA
MCKAY-BROWN, DETECTIVE SHERMAN PEARSON,
113TH SQUAD DETECTIVES #1-6, 113TH
"John Doe" POLICE OFFICERS #1-12, 113TH
"Jane Doe" POLICE OFFICERS #1-6,

Defendants.
---------------------------------------------------------------X

An Order of Honorable John Gleeson, United States District Judge, having been filed on

March 20, 2014, granting Plaintiff's motion to dismiss her illegal search claim with prejudice; directing

the Clerk of Court to enter judgment against the Plaintiff and in favor of Defendants in accordance with

the Court's Memorandum and Order dated October 28, 2013, which granted summary judgment for the

Defendants on all claims except Plaintiff's now dismissed illegal search claim; it is

ORDERED and ADJUDGED that Plaintiff's illegal search claim is dismissed with

prejudice; that Defendants' motion for summary judgment is granted; and that Plaintiff shall recover

nothing of the Defendants.

Dated: Brooklyn, New York                                           Douglas C. Palmer
         March 21, 2014                                                     Clerk of Court

                                                          by:    */s/ Janet Hamilton*
                                                                   Deputy Clerk